UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | Case Nos: 1:06-CR-2 \ 1:07-CV-83 |
| v. ) | |
| ) | |
| RUBEN ESTRADA-IBARRA ) | Chief District Judge Curtis L. Collier |
| ) | |

**MEMORANDUM**

Ruben Estrada-Ibarra, also known as Osiel Estrada ("Estrada") has filed a motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 (Crim. Court File No. 23). Estrada contends counsel was ineffective for failing to challenge several aspects of his sentence.

Having reviewed the materials thus submitted, together with the record of the underlying criminal case, the Court finds they show conclusively Estrada is not entitled to relief on the claims asserted; thus, an evidentiary hearing is not needed in this matter. *See United States v. Todaro*, 982 F.2d 1025, 1028 (6th Cir. 1993). Accordingly, the Court will decide the matter and explain the reasons Estrada's asserted grounds for relief are without merit. Rule 8(a) of the Rules Governing Section 2255 Proceedings in the United States District Courts.

**I.     BACKGROUND**

   **A.     Procedural Background**

Estrada was indicted on January 10, 2006, for illegally re-entering the United States in violation of 18 U.S.C. § 1326 (Crim. Court File No. 1). On January 12, 2006, the government filed a notice of sentencing enhancement based on a 2004 conviction of an aggravated felony (Crim. Court File No. 2). On March 9, 2006, Estrada pleaded guilty, without a plea agreement, to the one-

count indictment before United States Magistrate Judge Susan K. Lee (Crim. Court File No. 16). The Court adopted the report and recommendations and accepted the guilty plea on March 30, 2006 (Crim. Court File No. 18).

Under the 2005 United States Sentencing Guidelines ("Guidelines" or "USSG"), the base offense level was an eight. USSG § 2L1.2(a). Since Estrada had previously been deported after a conviction for a drug trafficking offense, he received a 12-level enhancement. USSG § 2L1.2(b). After a three-level reduction for acceptance of responsibility, his total offense level was 17. With seven criminal history points, his criminal history category was IV, which yielded a Guidelines range of 37 to 46 months. Estrada was sentenced to 41 months of imprisonment, two years of supervised release, and a $100 special assessment (Crim. Court File No. 21). Estrada did not appeal his sentence, but filed a timely 28 U.S.C. § 2255 motion on April 13, 2007.

**B.     Factual Background**

In the agreed factual basis, Estrada stipulated to the following facts:

1.      On December 19, 2005, Osiel ESTRADA was in custody at the Hamilton County Jail on charges of Possession of Marijuana for resale and Possession of Cocaine. Fingerprint checks through IDENT associated the subject with FINS number 155642829. This FINS number shows a previous apprehension by ICE Agents in Dalton, Georgia under the name Ruben ESTRADA-Ibarra.

2.      The Defendant, after waiving his *Miranda* rights to counsel on Service Form I-214 in the Spanish Language, stated that his true and correct name is Ruben ESTRADA-Ibarra and, that he is a citizen and national of Mexico, illegally in the United States, in violation of INS Law. The Defendant further stated that he entered the United States illegally without inspection by an Immigration Officer on or about March 5, 2005, near El Paso, Texas Port of Entry. The Defendant has no immigration documents allowing him to enter, reside, or be employed in the United States lawfully. The Defendant has not obtained consent from the Attorney General of the United States or Director of Homeland Security for reapplication for legal admission into the United States after the previous deportation to Mexico.

3.      Further investigation through Immigration Records Checks via Central Index

System (CIS), INS IDENT and FBI Criminal History checks associate the Defendant with FBI number 477862NB8 and INS Alpha Number 97 454 759. These checks were confirmed via fingerprint analysis through IDENT.

4.  Immigration records show the defendant was detained by the Immigration and Customs Enforcement (ICE) and deported to Mexico from Laredo, Texas Port of Entry (POE) on July 12, 2004.

5.  Criminal records show that on April 13, 2004, the defendant pled guilty in the Superior Court of Whitfield County, Georgia (Case Number 47734-A) for offense of Violation of Georgia Controlled Substance Act–(Methamphetamine) and Violation of the Georgia Controlled Substance Act–(Cocaine), was sentenced to 5 years, each count concurrent, suspended after 90 days in jail. The defendant was also arrested on December 17, 2005, by Chattanooga Police Department and charged with Possession of Marijuana for Resale and Possession of Cocaine. On December 23, 2005, he was found guilty in General Sessions Court for Drugs/Schedule I-IV (TCA 39-17-0417) to wit: Marijuana and Simple Possession (TCA 39-14-0418) to wit: Cocaine. He was sentenced to 11 months and 29 days, suspended after 30 days on both charges.

(Crim. Court File No. 13).

## II. STANDARD OF REVIEW

This Court must vacate and set aside the sentence if it finds that "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." 28 U.S.C. § 2255. Under Rule 8(a) of the Rules Governing Section 2255 Proceedings In The United States District Courts, the Court is to review the answer, any transcripts, and records of prior proceedings and any materials submitted under Rule 7 to determine whether an evidentiary hearing is warranted.

When a defendant files a § 2255 motion, he must set forth facts which entitle him to relief. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972); *O'Malley v. United States*, 285 F.2d 733, 735 (6th

Cir. 1961). "Conclusions, not substantiated by allegations of fact with some probability of verity, are not sufficient to warrant a hearing." *Green v. Wingo*, 454 F.2d at 53; *O'Malley*, 285 F.2d at 735 (citations omitted). A motion that merely states general conclusions of law without substantiating allegations with facts, is without legal merit. *Loum v. Underwood*, 262 F.2d 866, 867 (6th Cir. 1959), *United States v. Johnson*, 940 F. Supp. 167, 171 (W.D. Tenn. 1996).

To warrant relief under 28 U.S.C. § 2255 because of constitutional error, the error must be one of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (citation omitted) (§ 2254 case); *Clemmons v. Sowders*, 34 F.3d 352, 354 (6th Cir. 1994); *see also United States v. Cappas*, 29 F.3d 1187, 1193 (7th Cir. 1994) (applying *Brecht* to a § 2255 motion). If the sentencing court lacked jurisdiction, then the conviction is void and must be set aside. *Williams v. United States*, 582 F.2d 1039, 1041 (6th Cir.), *cert. denied*, 439 U.S. 988 (1978). To warrant relief for a nonconstitutional error requires a showing of a fundamental defect in the proceedings that resulted in a complete miscarriage of justice or an egregious error inconsistent with the rudimentary demands of fair procedure. *Reed v. Farley*, 512 U.S. 339, 354 (1994); *Grant v. United States*, 72 F.3d 503, 506 (6th Cir.), *cert. denied*, 517 U.S. 1200 (1996).

### III.  ANALYSIS

#### A.  Ineffective Assistance of Counsel Claims

Estrada asserts three claims against defense counsel. Estrada alleges counsel was constitutionally ineffective for (1) failing to move the Court to sentence him under the "fast track" Guidelines; (2) failing to move the Court for a downward departure based on his family's medical

4

conditions and financial hardship; and (3) failing to move for a downward variance based on cultural assimilation and status as a deportable alien.[1] After a brief discussion of the applicable law, the Court will address these claims of ineffective assistance of counsel in turn.

## B. Applicable Law

The Sixth Amendment provides, in pertinent part, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." A defendant has a Sixth Amendment right not just to counsel, but to "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In *Strickland*, the Supreme Court set forth a two-pronged test for evaluating claims of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687.

In considering the first prong of the test set forth in *Strickland*, the appropriate measure of attorney performance is "reasonableness under prevailing professional norms." *Id.* at 688. A defendant asserting a claim of ineffective assistance of counsel must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. The evaluation of the objective reasonableness of counsel's performance must be made "from

---

[1]Estrada also states he qualified for safety valve, but does not support the argument. As Estrada was a criminal history category IV, this assertion has no merit. USSG § 5C1.2(a)(1) ("the defendant does not have more than 1 criminal history point").

5

counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986).

The second prong of the *Strickland* test requires the petitioner to show counsel's deficient performance prejudiced the defense. Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691. The petitioner must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. The *Strickland* Court emphasized both prongs must be established in order to meet the claimant's burden, and if either prong is not satisfied the claim must be rejected, stating:

> Although we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed. Courts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result.

*Id.* at 697.

### 1. "Fast Track" Guidelines

Estrada contends he would have been sentenced to 20 to 27 months had his counsel moved for sentencing under the "fast track" Guidelines. As the Court of Appeals for the Sixth Circuit explained, the Attorney General can authorize districts to participate in "fast track" programs, which "allow[s] courts in those districts to provide a four-level downward departure to a defendant who makes an early guilty plea." *United States v. Perez-Vasquez*, 570 F.3d 692, 694 (6th Cir. 2009).

In districts with "fast track" programs, "[u]pon motion of the Government, the court may depart downward not more than 4 levels." USSG § 5K3.1.

The Eastern District of Tennessee does not participate in a "fast track" program. *Perez-Vasquez*, 570 F.3d at 694. In addition, as stated in USSG § 5K3.1, any motion for a downward departure must be made by the government, not by defense counsel. Since Estrada was not eligible for a downward departure under the "fast track" Guidelines, it was not ineffective assistance of counsel for his attorney to not make the argument he should receive one.

To the extent Estrada contends his attorney should have moved for a non-guideline sentence based on sentencing disparities due to the "fast track" Guidelines, on direct appeal, the Sixth Circuit has held "fast-track guidelines reductions were specifically authorized by statute due to the unique and pressing problems related to immigration in certain districts. As a result, such a disparity does not run counter to [18 U.S.C.] § 3553(a)'s instruction to avoid unnecessary sentencing disparities." *United States v. Hernandez-Fierros*, 453 F.3d 309, 314 (6th Cir. 2006). Since the Sixth Circuit has determined such disparities do not violate 18 U.S.C. § 3553(a), it was not unreasonable for defense counsel to fail to make such an argument.

## 2. Family Medical Conditions and Financial Hardship

Estrada argues his counsel should have argued for a sentence below the Guidelines based on his family's medical conditions and financial hardship. Estrada does not assert he ever brought his family's medical conditions to the attention of his attorney and, therefore, fails to support his claim for ineffective assistance of counsel.

The sentencing transcript shows both defense counsel and Estrada brought the Court's attention to Estrada's motivation for committing the offense. Defense counsel stated:

7

> Mr. Estrada Ibarra assures me that the main reason why he was here, returned to this country after being deported, was to provide for his family, for employment, because back in the small town in Mexico where he's from, he could not find any gainful employment. And that was the reason for him being here, Your Honor.

(Crim. Court File No. 28). Estrada reinforced this assertion, telling the Court:

> I am very regretful to have crossed the border; but over there where I was living, there was no work for me. And I am the oldest son in my family, and I have to support my family.

(*id.*). The Court, however, rejected this argument. In explaining the sentence, the Court said:

> If, as you say, the reason you came back was to help support your family in Mexico, then obviously you are going to fail in that effort because while you are in jail, you're not going to be able to support anyone.
>
> You have two convictions for drugs. And if you come back into the United States again and obtain a third conviction, in some states you're going to be looking at, if not a life sentence, a sentence of 20 or 30 years or more. If you are serving that long a prison sentence, you're not going to be able to support anybody.
>
> Following this conviction here, you're going to be sent back to your home country. And you're going to be tempted to come to the United States again. But you need to keep in mind that while you are in jail, you're not helping anybody at all.

(*id.*). Thus, although defense counsel did not specifically request a sentence below the Guidelines based on Estrada's family's medical conditions and financial hardships, it is clear such a motion would have failed. Since Estrada was not prejudiced by the lack of a motion for a downward departure or a variance, his claim of ineffective assistance must fail.

### 3. Cultural Assimilation and Deportable Alien Status

Finally, Estrada contends his counsel failed to adequately assist him by not moving the Court to depart from the Guidelines under USSG 5K2.0 based on cultural assimilation and Estrada's status as a deportable alien.

The Sixth Circuit has never recognized cultural assimilation as a valid basis for a downward

8

departure. *United States v. Lozano-Alvarez*, 226 F. App'x 531, 533-34 (6th Cir. 2007). In addition, in his motion for relief under 28 U.S.C. § 2255, Estrada points to no evidence showing the "extraordinary circumstances" necessary to support a downward departure. *United States v. Vasquez-Duarte*, 59 F. App'x 625, 627 (6th Cir. 2003) (rejecting a claim of ineffective assistance of counsel for failing to request a downward departure based on cultural assimilation). The presentence report prepared on Estrada gives little support to a claim of cultural assimilation, indicating his parents, three siblings, and his fiancee live in Mexico, with two sisters living in the United States. As he fails to show cultural assimilation, especially to an exceptional degree, his claim of ineffective assistance of counsel is unsupported.

Estrada also asserts his defense counsel should have moved for a lower sentence based on disparities between deportable aliens and United States citizens. It is clear from the sentencing transcript the Court was aware of Estrada's status as a deportable alien (Crim. Court File No. 28, "Following this conviction here, you're going to be sent back to your home country."). Rather than using this as a basis for a downward departure or a non-guideline sentence, the Court included a special condition requiring Estrada to surrender to an immigration official for deportation and comply with the deportation order (Crim Court File No. 21). Since Estrada cannot establish a motion based on his status as a deportable alien would have altered the outcome of the proceeding, his claim is not meritorious.

## IV. CONCLUSION

For the reasons stated above Estrada is not entitled to any relief under 28 U.S.C. § 2255 as his sentence does not violate the Constitution or laws of the United States. Accordingly, Estrada's

motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 will be **DENIED**.

An Order shall enter.

/s/
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**